SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Ellen Baskin v. P.C. Richard & Son, LLC (A-77-19) (084257)**

**Argued January 4, 2021 -- Decided May 5, 2021**

**FERNANDEZ-VINA, J., writing for the Court.**

In this case, the Court considers whether plaintiffs, who suffered no actual harm and are seeking statutory damages, sufficiently pled a class action against defendants for noncompliance with the Fair and Accurate Credit Transactions Act of 2003 (FACTA) such that their complaint should have survived a motion to dismiss under Rule 4:6-2(e).

Plaintiffs filed a putative class action on behalf of themselves and "[a]ll consumers to whom [d]efendants, after November 17, 2013, provided an electronically printed receipt" listing the expiration date of the consumer's credit or debit card in violation of FACTA. Plaintiffs' only alleged injury was exposure to an increased risk of identity theft and credit/debit card fraud. The complaint alleged that "there are, at a minimum, thousands (i.e., two thousand or more) of members that comprise the Class." The complaint also noted that common questions -- including whether defendants' receipts violated FACTA, whether defendants' conduct was willful, and whether the class is entitled to damages -- predominated over any individual questions. It further alleged that a class action is superior to other means of adjudicating these claims because the prospective damages are too small to incentivize individual litigation and because numerous small claims give rise to inconsistent results, redundancy, and delay. The complaint sought an order certifying the class, as well as statutory and punitive damages and costs and attorney's fees.

The trial court granted defendants' motion to dismiss plaintiffs' complaint based on its determination that plaintiffs could not satisfy Rule 4:32-1's numerosity, predominance, or superiority requirements for class certification. The Appellate Division affirmed the dismissal as it pertained to the class action claims. 462 N.J. Super. 594, 619 (App. Div. 2020). The Court granted plaintiffs' petition for certification pertaining to the class certification issues. 242 N.J. 503 (2020).

**HELD:** Plaintiffs sufficiently pled the class certification requirements to survive a motion to dismiss. The Court remands the matter for class action discovery to be conducted pursuant to Rule 4:32-2(a) so that the trial court may determine whether to certify the class.

1

1.  A class action allows one or more individuals to act as plaintiff or plaintiffs in representing the interests of a larger group of persons with similar claims.  A class action can create an incentive for individuals to band together when their claims in isolation are too small to warrant recourse to litigation.  The policy goals of judicial economy, consistent treatment of class members, and protection of defendants from inconsistent results are furthered through the class action device.  Rule 4:32-1(a) requires a putative class to satisfy four general prerequisites:  (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Plaintiffs pursuing class certification must also satisfy one of the three requirements of Rule 4:32-1(b).  Of importance to this case are the subsection (b)(3) requirements, pursuant to which the court must "find[] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  (pp. 14-17)

2.  Rule 4:32-1 does not specify a minimum number of class members necessary to satisfy the numerosity requirement of subsection (a).  New Jersey courts frequently describe that requirement without numerical precision.  To determine predominance under Rule 4:32-1(b)(3), the court decides whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  That determination requires an assessment of various factors, including:  the significance of the common questions; whether the benefit of resolving common and presumably some individual questions through a class action outweighs doing so through individual actions; and whether a class action presents a common nucleus of operative facts.  Whether a class action is superior to individual actions or some other alternative procedure involves considerations of fairness to the putative class members and the defendant, and the efficiency of one adjudicative method over another.  One factor that should be considered is whether any one individual who has suffered a wrong will have the financial wherewithal or incentive to prosecute a claim that might cost more than its worth.  (pp. 17-21)

3.  When FACTA was enacted in 2003, one of its purposes was to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud.  FACTA prohibits any business that accepts credit or debit cards from "print[ing] . . . the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1).  FACTA imposes civil liability on persons or businesses that are negligently or willfully noncompliant with its terms.  If willfully noncompliant, as plaintiffs allege here, a business will be subject to civil liability for "any actual damages sustained by the consumer" or statutory damages ranging from $100 to $1,000; "punitive damages as the court may allow"; and "the costs of the action together with reasonable attorney's fees as determined by the court."  15 U.S.C. § 1681n(a)(1)(A), (a)(2), (a)(3).  (pp. 22-23)

2

4. The Court applies the principles of Rule 4:32-1 to the FACTA claim alleged in plaintiffs' complaint while searching the complaint with liberality and giving plaintiffs the benefit of every reasonable inference of fact therein. The Court finds plaintiffs' allegation that there are a minimum of two thousand members of the class sufficient to survive a motion to dismiss with respect to Rule 4:32-1(a)'s numerosity requirement. That estimate is supported by the class period pled, which spanned two years and nine months. In that time period, it is reasonable that the class could contain at minimum two thousand members, given that anyone who received a noncompliant receipt from one of defendants' stores would be an eligible member. Absent discovery of defendants' sales records, plaintiffs have no way to know how many credit and debit card transactions defendants conducted during the relevant period. (pp. 23-25)

5. The Court finds plaintiffs pled sufficient facts to withstand a motion to dismiss on the issue of predominance at this stage because the class is seeking statutory damages. In order to prove that defendants violated FACTA, plaintiffs must demonstrate that defendants willfully printed receipts containing credit or debit card expiration dates. See 15 U.S.C. §§ 1681c(g)(1), 1681n. The common nucleus of operative facts is, as plaintiffs pled, whether defendants programmed their equipment to print the expiration dates of customers' credit/debit cards on receipts; the answer to that question will apply to all class members. If plaintiffs are successful in establishing defendants' willful noncompliance with FACTA, then statutory damages are available to all class members uniformly. (pp. 25-26)

6. The Court concludes plaintiffs sufficiently pled superiority to survive a motion to dismiss. Plaintiffs sufficiently addressed in their complaint considerations of fairness to the parties and judicial efficiency, as well as of class members' financial wherewithal or incentive to pursue a claim that might cost more than its worth. FACTA's willfulness requirement makes it more difficult for an individual plaintiff to bring a FACTA claim for statutory damages because it is unlikely a plaintiff appearing pro se in small claims court will know how to demonstrate willfulness. Moreover, individual damages are likely to be small and, as a result, individual class members are unlikely to have the financial wherewithal or incentive to bring a claim. Additionally, if forced to proceed individually, there is nothing stopping one attorney from bringing numerous plaintiffs into small claims court and trying each claim one at a time. Such an approach would not foster judicial efficiency; nor would it be fair to defendants, who could be exposed to inconsistent results. Given those considerations, and at this stage of litigation before discovery has been conducted, plaintiffs alleged sufficient facts to survive a motion to dismiss on the question of superiority. (pp. 26-30)

**REVERSED and REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion.**

SUPREME COURT OF NEW JERSEY

A-77 September Term 2019

084257

Ellen Baskin, Kathleen O'Shea,
and Sandeep Trisal, on behalf
of themselves and all others
similarly situated,

Plaintiffs-Appellants,

v.

P.C. Richard & Son, LLC,
d/b/a P.C. Richard & Son,
and P.C. Richard & Son, Inc.,
d/b/a P.C. Richard & Son,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
462 N.J. Super. 594 (App. Div. 2020).

| Argued | Decided |
| --- | --- |
| January 4, 2021 | May 5, 2021 |

Chant Yedalian, of the California bar, admitted pro hac
vice, argued the cause for appellants (Lite DePalma
Greenberg and Chant & Company, attorneys; Bruce D.
Greenberg, and Chant Yedalian, on the briefs).

William S. Gyves argued the cause for respondents
(Kelley Drye & Warren, attorneys; William S. Gyves,
Glenn T. Graham, and Robert N. Ward, on the briefs).

1

Bruce H. Nagel argued the cause for amicus curiae New Jersey Association for Justice (Nagel Rice, attorneys; Bruce H. Nagel, of counsel and on the brief, and Randee M. Matloff, on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

In this case, the Court considers whether plaintiffs sufficiently pled the class certification requirements to survive a motion to dismiss under Rule 4:6-2(e).  Ellen Baskin, Kathleen O'Shea, and Sandeep Trisal (plaintiffs) filed a class action complaint against defendants P.C. Richard & Son, LLC, and P.C. Richard & Son, Inc., alleging defendants violated the Federal Fair and Accurate Credit Transactions Act of 2003 (FACTA) by printing plaintiffs' credit or debit card expiration dates on their receipts.  Although plaintiffs did not suffer identity theft, fraud, or third-party disclosure as a result of the information on the receipts, they allege that defendants' noncompliance with FACTA has placed them at an increased risk of harm and seek statutory damages.

FACTA prohibits any business that accepts credit or debit cards from "print[ing] more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1).  FACTA imposes civil liability on businesses that are willfully noncompliant with its terms.  Id. § 1681n.  If

2

plaintiffs can establish defendants' willful noncompliance, statutory damages ranging from $100 to $1,000 will be awarded to each plaintiff.  Id. § 1681n(a)(1)(A).

Defendants moved to dismiss plaintiffs' complaint, arguing that plaintiffs could not meet the superiority requirement for class certification because statutory damages available under FACTA were sufficient to incentivize individual actions.  The trial court granted the motion, finding:  (1) plaintiffs failed to establish numerosity because they did not specify how many members were in the class; (2) predominance was not satisfied because some class members may have suffered actual damages and liability would therefore have to be determined on a case-by-case basis; and (3) superiority was not established because FACTA's statutory award sufficiently incentivized plaintiffs to bring suit individually.  The Appellate Division affirmed the dismissal as it pertained to the class action claims and to the individual claims of O'Shea and Trisal; however, the appellate court reversed the dismissal of Baskin's individual claim.

In light of our standard of review at this stage, we disagree with the trial and appellate courts and reverse the grant of defendants' motion to dismiss. Giving plaintiffs the benefit of all favorable inferences here, we find they sufficiently pled the class certification requirements to survive a motion to

3

dismiss.  Specifically, we conclude that:  (1) an exact or specific number of class members need not be pled to satisfy numerosity; (2) questions as to whether defendants were willfully noncompliant with FACTA and programmed their equipment to print credit or debit card expiration dates predominated because plaintiffs are seeking only statutory and punitive damages; and (3) the class action vehicle seems to be the superior means of adjudicating plaintiffs' claims because it is unlikely a plaintiff will have the financial wherewithal to bring these claims individually in small claims court.

However, we are not certifying the class at this time.  Instead, we are remanding the matter for class action discovery to be conducted pursuant to Rule 4:32-2(a) so that the trial court may determine whether to certify the class.

## I.
## A.

In April 2018, plaintiffs Kathleen O'Shea and Sandeep Trisal, New York residents, joined New Jersey resident Ellen Baskin to file this putative class action in New Jersey state court on behalf of themselves and "[a]ll consumers to whom [d]efendants, after November 17, 2013, provided an electronically printed receipt" listing the expiration date of the consumer's credit or debit

4

card in violation of FACTA.[1]  Baskin alleged that on May 24, 2016, she received a receipt containing her card's expiration date from one of defendant's retail stores in Brick, New Jersey.  Plaintiffs' only alleged injury was exposure to an increased risk of identity theft and credit/debit card fraud.

The complaint alleged that "there are, at a minimum, thousands (i.e., two thousand or more) of members that comprise the Class," and that "[t]he exact size of the Class and identities of individual members thereof are ascertainable through [d]efendants' records."  The complaint also noted that common questions -- including whether defendants' receipts violated FACTA, whether defendants' conduct was willful, and whether the class is entitled to damages -- predominated over any individual questions.  It further alleged that a class action is superior to other means of adjudicating these claims because the prospective damages are too small to incentivize individual litigation and because numerous small claims give rise to inconsistent results, redundancy,

---

[1]  In 2016, O'Shea and Trisal filed a similar class action complaint against defendants in the Southern District of New York.  O'Shea v. P.C. Richard & Son, LLC, No. 15 Civ. 9069, 2017 U.S. Dist. LEXIS 122424, at *3-*6 (S.D.N.Y. Aug. 3, 2017).  As part of that matter, O'Shea and Trisal alleged defendants were aware of their noncompliance because, in 2015, O'Shea had (a) served defendants with a cease-and-desist letter demanding defendants update their printing practices to comply with FACTA and (b) attached a draft complaint to the letter.  Id. at *3-*4.  Ultimately, the court granted defendants' motion to dismiss because plaintiffs could not establish Article III standing.  Id. at *18.

5

and delay. The complaint sought an order certifying the class, as well as statutory and punitive damages and costs and attorney's fees.

In September 2018, defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted, arguing that plaintiffs had not alleged they "sustained any ascertainable harm"; defendants also contended that plaintiffs' FACTA claims should not be litigated as a class action because plaintiffs could not satisfy the superiority prong of Rule 4:32-1(b)(3). Defendants argued, finally, that New Jersey courts lack personal jurisdiction over O'Shea and Trisal's New York-based claims. Plaintiffs opposed the motion.

After hearing oral argument, the trial court issued a written opinion granting defendants' motion to dismiss based on its determination that plaintiffs could not satisfy Rule 4:32-1's numerosity, predominance, or superiority requirements.

The trial court concluded that the numerosity requirement was not satisfied because plaintiffs failed to allege a potential number of class members "except to contend that there could be 'thousands of people whose credit card information was exposed on improper receipts.'"

The trial court held that predominance was not established because plaintiffs' failure to claim they suffered actual damages from identity theft or

6

credit/debit card fraud put their "claims at odds with the legislative purpose of FACTA" and indicates "an overall lack of demonstrable damages" as to these particular plaintiffs. Therefore, because other consumers who fall into the proposed class may have actually been victims of identity theft or fraud, "[t]he potential[ly] disparate nature of damages . . . require[s] courts to adjudicate [d]efendants' liability on a case-by-case basis," which "cuts directly against the purpose of Rule 4:32-1's class certification predominance and superiority prongs."

The court determined that superiority was not established because prevailing New Jersey law dictates that "adjudication of claims on an individual basis in small claims court is 'a far superior method to vindication of any rights and protection of the public than any certification or class action' in situations where a statutory damage award incentivizes a party to act in his or her interest." (quoting Local Baking Prods., Inc. v. Kosher Bagel Munch, Inc., 421 N.J. Super. 268, 272 (App. Div. 2011)). The court then detailed the process of filing an individual claim pro se in small claims court.

The court dismissed plaintiffs' complaint for failure to satisfy the requirements of class certification. The court also concluded that it did not have personal jurisdiction over O'Shea and Trisal's claims.

7

B.

The Appellate Division, in a published opinion, affirmed the trial court's denial of class certification and dismissal of the complaint as it pertained to O'Shea and Trisal, but it reversed the dismissal of Baskin's claim, remanding it to be reinstated as an individual action. Baskin v. P.C. Richard & Son, LLC, 462 N.J. Super. 594, 619 (App. Div. 2020).

The Appellate Division concluded that numerosity had not been satisfied because plaintiffs "failed to sufficiently articulate the size of the class" because they did not "name the number of potential class members, and only vaguely stated that there could be 'thousands of people whose credit card information was exposed on improper receipts.'" Id. at 607-08.

The court likewise held that plaintiffs failed to allege facts sufficient to establish predominance, noting that "the sheer amount of uncertainties in respect of the amount of potential FACTA claims against defendants, and any harm that arose from such violations, renders it difficult to determine a common nucleus of operative facts." Id. at 615.

Regarding superiority, the court determined plaintiffs failed to make a prima facie showing that a class action was superior to individual actions in small claims court. Id. at 601, 608-13. The Appellate Division relied upon the reasoning of Local Baking and the dismissal of O'Shea and Trisal's New York

8

action when assessing whether plaintiffs met the superiority requirement. Id. at 608-13.

We granted plaintiffs' petition for certification pertaining to the class certification issues. 242 N.J. 503 (2020). We also granted the New Jersey Association for Justice's (NJAJ) motion to appear as amicus curiae.

## II.

## A.

Plaintiffs assert the trial and appellate courts imposed three barriers to class certification at the pleading stage, each of which on its own has the effect of precluding class action lawsuits in this State. Those barriers concern the numerosity, predominance, and superiority requirements of Rule 4:32-1.

Plaintiffs submit that they more than adequately pled numerosity in their complaint by alleging "that there are, at a minimum, thousands (i.e., two thousand or more) of members that comprise the class" given that the class period pled was a span of two years and nine months. Plaintiffs argue that by refusing to certify the class because plaintiffs failed to state the size of the proposed class with specificity, the trial and appellate courts created a new pleading requirement that contravenes this Court's decision in Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496, 505 (2010).

Next, plaintiffs note that predominance was also determined sua sponte by the trial and appellate courts. They argue this case is ideal for class treatment because the major question that predominates is whether defendants programmed their equipment to print expiration dates on customer receipts, willfully or not -- a question whose answer will not vary from one class member to the next. Relying on Delgozzo v. Kenny, 266 N.J. Super. 169, 190 (App. Div. 1993), plaintiffs assert that class certification can still be appropriate even if individual damages need to be calculated as long as "common questions as to liability predominate." They add that potential class members who may have incurred actual damages as a result of defendants' actions can opt out of the class.

Regarding superiority, plaintiffs take issue with the trial and appellate courts' conclusion that because statutory damages are recoverable in small claims court, a class action cannot be a superior method of enforcement. Plaintiffs argue that the trial and appellate courts' and defendants' reliance on Local Baking for that proposition is misplaced because that case dealt with a narrow issue involving the Telephone Consumer Protection Act (TCPA) of 1991, 47 U.S.C. § 227. Plaintiffs distinguish the TCPA claims in Local Baking from the FACTA claims here, pointing to the differences between the

elements of the respective claims and between the legislative histories of both Acts.

Additionally, plaintiffs rely on <u>United Consumer Financial Services Co. v. Carbo</u>, 410 N.J. Super. 280, 295 (App. Div. 2009), to support their position that a class action is superior here because, although there are numerous claims, any individual's recovery would likely be small. Plaintiffs also note the <u>Carbo</u> court specifically addressed and rejected defendants' argument regarding superiority and statutory violations for which a statutory civil penalty is available.

Plaintiffs further argue that small claims court is not an appropriate or superior method of adjudicating FACTA claims because it does not allow the extensive discovery needed to prove a willful violation and because successful plaintiffs may be entitled to damages and attorneys' fees that exceed the $3,000 jurisdictional limit of small claims court.

B.

Amicus NJAJ aligns itself with plaintiffs and emphasizes that "the class action rule should be liberally construed." Applying traditional principles of liberal construction, NJAJ argues, a motion court is required to meticulously search the pleadings to find even a suggested cause of action when a motion to dismiss on the pleadings is filed; if a suggested cause of action cannot be

found, NJAJ adds, then leave to amend should be granted. NJAJ reiterates plaintiffs' arguments that the trial and appellate courts effectively ended plaintiffs' class action claims when they sua sponte "expanded the grounds of dismissal to include pleading deficiencies on the issues of numerosity and predominance."

## C.

Defendants contend that, because numerosity was not at issue in <u>Lee</u>, plaintiffs' argument that the Appellate Division's holding on numerosity is in conflict with that decision cannot be correct. With respect to predominance, defendants argue plaintiffs mischaracterize the holding in <u>Delgozzo</u> and rely on dicta. Specifically, defendants note the predominance issue in <u>Delgozzo</u> involved conflict-of-law considerations that are not present here; thus, in defendants' view, there is no intersection between <u>Delgozzo</u> and the holdings in this case.

Defendants' main argument concerns superiority. They argue that, contrary to plaintiffs' claims, the trial and appellate decisions here did not have the broad effect of barring class actions for claims involving statutory damages. Relying on <u>Local Baking</u>, defendants argue that FACTA provides for a statutory remedy that is sufficient to incentivize an individual to act in his or her own interest. Defendants also argue plaintiffs misread <u>Carbo</u> because

12

the argument rejected there is not the same as the argument defendants make here -- that FACTA's statutory remedy sufficiently incentivizes an aggrieved consumer to bring a claim individually.

Defendants assert that extensive discovery is not needed here because willfulness under FACTA does not require proof of defendants' subjective bad faith or intent; rather, claims for statutory damages under FACTA require only that plaintiffs present the court with a noncompliant receipt and prove defendants had some knowledge of FACTA to receive statutory damages. Thus, defendants assert, plaintiffs' FACTA claims are not so complex that they cannot be addressed in small claims court.

Lastly, defendants contend that the small claims court's $3,000 jurisdictional cap would cover any damages and attorneys' fees, adding that, should the cap be surpassed, plaintiffs could then file, in or seek to be removed to, the Law Division.

### III.

The issue presented by this appeal is whether plaintiffs, who suffered no actual harm and are seeking statutory damages, sufficiently pled a class action against defendants for noncompliance with FACTA such that their complaint should have survived a motion to dismiss under Rule 4:6-2(e).

13

Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo. Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). A reviewing court must examine "the legal sufficiency of the facts alleged on the face of the complaint," giving the plaintiff the benefit of "every reasonable inference of fact." Id. at 107 (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). The complaint must be searched thoroughly "and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). "Nonetheless, if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Dimitrakopoulos, 237 N.J. at 107.

IV.

A.

With that standard in mind, we turn to the principles of class certification. A class action allows "one or more individuals to act as plaintiff or plaintiffs in representing the interests of a larger group of persons with similar claims." Lee, 203 N.J. at 517. A class action can create an incentive

14

for a large number of individuals who may have similar valid claims to "band together" when "those claims in isolation are 'too small . . . to warrant recourse to litigation.'" Ibid. (omission in original) (quoting In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 435 (1983)). That is especially true when the alleged perpetrator of the wrong is a "corporate entity that wields enormous economic power"; by allowing plaintiffs to "band together," class actions can level the playing field and "thus provid[e] 'a procedure to remedy a wrong that might otherwise go unredressed.'" Id. at 517-18 (quoting In re Cadillac, 93 N.J. at 424). Put simply, the class action device permits "'an otherwise vulnerable class' of diverse individuals with small claims access to the courthouse." Id. at 518 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 120 (2007)).

Additionally, the policy goals of "judicial economy," "consistent treatment of class members," and "protection of defendants from inconsistent [results]" are furthered through the class action device. Ibid. (alteration in original) (quoting Iliadis, 191 N.J. at 104). Accordingly, "a court should be slow to hold that a suit may not proceed as a class action" and should rarely deny a class action based on the face of the complaint. Riley v. New Rapids Carpet Ctr., 61 N.J. 218, 228 (1972). That said, pre-discovery dismissal of a class action is permitted if the court determines that discovery would not

15

provide a basis for relief.  See Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 473-81 (App. Div. 2015) (affirming pre-discovery dismissal because the plaintiffs' claims depended on non-uniform contracts between each plaintiff and the defendant, as well as on steps taken by each plaintiff leading up to the defendant's alleged breach).

Rules 4:32-1 and -2 govern class actions in New Jersey.  Rule 4:32-1 sets forth the requirements for maintaining a class action.  Subsection (a) of that rule requires a putative class to satisfy four general prerequisites in order to sue as a class:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> [R. 4:32-1(a).]

Those prerequisites are "frequently termed 'numerosity, commonality, typicality and adequacy of representation.'"  Dugan v. TGI Fridays, Inc., 231 N.J. 24, 47 (2017) (quoting Lee, 203 N.J. at 519).

In addition to the prerequisites of subsection (a), plaintiffs pursuing class certification must also satisfy one of the three requirements of subsection (b).

16

Of importance to this case are the subsection (b)(3) requirements, pursuant to which the court must

> find[] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include:
>
> > (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> >
> > (C) the desirability or undesirability in concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the difficulties likely to be encountered in the management of a class action.
>
> [R. 4:32-1(b)(3).]

1.

Rule 4:32-1 does not specify a minimum number of class members necessary to satisfy the numerosity requirement of subsection (a). Federal courts deciding class certification issues governed by Federal Rule of Civil Procedure 23(a), the Federal Class Action Rule -- which served as the model for Rule 4:32-1, see In re Cadillac, 93 N.J. at 424-25 -- have stated that

17

"[t]here is no set numerical cutoff used to determine whether a class is sufficiently numerous; courts must examine the specific facts of each case to evaluate whether the requirement has been satisfied." In re Toys "R" Us, 300 F.R.D. 347, 367 (C.D. Cal. 2013). However, "[a]s a general rule . . . classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." Id. at 367-68 (quoting Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988)).

New Jersey courts frequently describe the numerosity requirement without numerical precision. See Dugan, 231 N.J. at 64-65 & n.12 (concluding that the proposed class of 263,000 "clearly includes numerous claimants"); Lee, 203 N.J. at 512 (determining that the trial court described the class as sufficiently numerous because it included "well over 10,000 members"); In re Cadillac, 93 N.J. at 425 (affirming the trial court's finding that "[a] class of approximately 7,500 plaintiffs is sufficiently numerous").

2.

"To determine predominance under Rule 4:32-1(b)(3), the court decides 'whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."'" Dugan, 231 N.J. at 48 (quoting Iliadis, 191 N.J. at 108). That determination requires

18

> a court [to] conduct a "pragmatic assessment" of various factors. One inquiry is the significance of the common questions. That inquiry involves a qualitative assessment of the common and individual questions rather than a mere mathematical quantification of whether there are more of one than the other. The second inquiry is whether the "benefit" of resolving common and presumably some individual questions through a class action outweighs doing so through "individual actions." A third inquiry is whether a class action presents a "common nucleus of operative facts."
>
> [Lee, 203 N.J. at 519-20 (citations omitted) (quoting Iliadis, 191 N.J. at 108).]

The predominance prong is "'far more demanding' than Rule 4:32-1(a)(2)'s requirement that there be questions of law or fact common to the class." Dugan, 231 N.J. at 48 (quoting Castro v. NYT Television, 384 N.J. Super. 601, 608 (App. Div. 2006)). "Significantly," however, "to establish predominance, plaintiff does not have to show that there is an 'absence of individual issues or that the common issues dispose of the entire dispute,' or 'that all issues [are] identical among class members or that each class member [is] affected in precisely the same manner.'" Lee, 203 N.J. at 520 (alterations in original) (quoting Iliadis, 191 N.J. at 108-09).

Class certification is not necessarily precluded when individual class members' degree of damages will require individualized proof. See Delgozzo, 266 N.J. Super. at 181 ("[I]t is clear that New Jersey courts will permit class certification even though individual questions, such as the degree of damages

19

due a particular class member, . . . may remain following resolution of the common questions." (citing In re Cadillac, 93 N.J. at 429-30)). Additionally, a proposed class may limit how individualized questions about the type or extent of harm suffered by individual class members will factor into the predominance and superiority assessments by limiting the relief sought to a type that will not be affected by the resolution of individualized questions. See id. at 187 ("[P]laintiffs assert that they seek only economic damages, correctly noting that class members who have also suffered personal injuries as a result of using defendants' product may, if warranted, opt out and proceed independently on those issues. In re Cadillac lends support to the position that a class may be certified where individual members of the class may have suffered personal injury.").

3.

"A class action plaintiff must also demonstrate that 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'" Dugan, 231 N.J. at 49 (quoting R. 4:32-1(b)(3)). "By definition, 'superior' implies a comparison with alternative procedures such as a test case or joinder of claims." In re Cadillac, 93 N.J. at 436. "Whether a class action is superior to thousands of minor, individual actions or some other 'alternative procedure[]' involves considerations of fairness to the putative

20

class members and the defendant, and the 'efficiency' of one adjudicative method over another." Lee, 203 N.J. at 520 (alteration in original) (quoting In re Cadillac, 93 N.J. at 436).

One factor that should be considered in a fairness determination is "whether any one individual who has suffered a wrong will have the financial wherewithal or incentive to prosecute a claim that might cost more than its worth." Ibid.; accord Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 384 (2007) ("[I]n Iliadis, we identified as important to the superiority analysis a consideration of the class members' lack of financial wherewithal. In such circumstances, we have expressed a concern that, absent a class, the individual class members would not pursue their claims at all, thus demonstrating superiority of the class action mechanism." (citations and internal quotation marks omitted)); see also In re Cadillac, 93 N.J. at 436-37 (affirming the trial court's determination that a class action was superior to a test case in that matter because resolution of issues common to the class would "require substantial discovery, expert testimony, and trial time, all of which would render uneconomical an individual suit by a single disgruntled customer").

In Carbo, the Appellate Division considered a challenge to class certification after the class was awarded a civil penalty of $100 for each

21

member, attorney's fees, and costs under the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA). 410 N.J. Super. at 292. The court rejected the defendants' argument that a class action is not superior to individual actions when plaintiffs are seeking statutory damages. Id. at 308. The court affirmed class certification, noting that "Rule 4:32-1 must be liberally construed, and a class action is the favored means of adjudicating numerous claims involving a common nucleus of facts for which each individual's recovery will be small." Id. at 295.

B.

When FACTA was enacted in 2003, one of its purposes was "to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud." Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, § 2(a)(1), 121 Stat. 1565 (2008). As noted, FACTA prohibits any business that accepts credit or debit cards from "print[ing] more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1).

FACTA imposes civil liability on persons or businesses that are negligently or willfully noncompliant with its terms. See 15 U.S.C. §§ 1681n, 1681o. If negligently noncompliant, a business will be subject to civil liability

22

to the consumer for actual damages, costs, and attorney's fees. 15 U.S.C. § 1681o(a). If willfully noncompliant, as plaintiffs allege here, a business will be subject to civil liability for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000"; "punitive damages as the court may allow"; and "the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a)(1)(A), (a)(2), (a)(3).

## V.

We now apply the principles of Rule 4:32-1 to the FACTA claim alleged in plaintiffs' complaint while searching the complaint with liberality "to ascertain whether the fundament of a cause of action may be gleaned," Printing Mart, 116 N.J. at 746 (quoting Di Cristofaro, 43 N.J. Super. at 252), and giving plaintiffs the benefit of "every reasonable inference of fact" therein, Dimitrakopoulos, 237 N.J. at 107 (quoting Printing Mart, 116 N.J. at 746). The Appellate Division affirmed the trial court's grant of defendants' motion to dismiss based on plaintiffs' alleged failure to satisfy the numerosity, predominance, and superiority requirements. We disagree and find that plaintiffs sufficiently pled those requirements to survive a motion to dismiss.

23

A.

Both the trial court and the Appellate Division concluded plaintiffs did not satisfy the numerosity requirement of Rule 4:32-1(a) because they failed to specify the number of class members except for saying that there "could be" thousands. However, that misstates plaintiffs' allegations in their complaint. Plaintiffs did not allege that there "could be" thousands of members, rather they alleged that "there are, at a minimum, thousands (i.e., two thousand or more) of members that compromise the Class"; plaintiffs also stated that "[t]he exact size of the Class and identities of individual members thereof are ascertainable through [d]efendants' records." (emphasis added). The trial and appellate courts' determination that the class was not pled with specificity is inconsistent with our standard of review, which requires us to give plaintiffs the benefit of "every reasonable inference of fact." Dimitrakopoulos, 237 N.J. at 107 (quoting Printing Mart, 116 N.J. at 746).

Giving the plaintiffs that benefit here requires us to accept as true plaintiffs' allegation that there are a minimum of two thousand members of the class. That estimate is also supported by the class period pled, which spanned two years and nine months. In that time period, it is reasonable that the class could contain at minimum two thousand members, given that anyone who received a noncompliant receipt from one of defendants' stores would be an

24

eligible member. Additionally, absent discovery of defendants' sales records, plaintiffs have no way to know how many credit and debit card transactions defendants conducted during the relevant period.

Therefore, because plaintiffs have not had the benefit of discovery, we find that their allegation that "there are, at a minimum, thousands (i.e., two thousand or more)" of class members is sufficient to survive a motion to dismiss with respect to Rule 4:32-1(a)'s numerosity requirement.

B.

The trial court and Appellate Division determined that plaintiffs failed to satisfy the predominance requirement of Rule 4:32-1(b)(3) because there were too many uncertainties regarding the number of claims and the harm suffered; thus, it was "difficult to determine a common nucleus of operative facts." We disagree and find plaintiffs pled sufficient facts to withstand a motion to dismiss on the issue of predominance at this stage because the class is seeking statutory damages.

In order to prove that defendants violated FACTA, plaintiffs must demonstrate that defendants willfully printed receipts containing credit or debit card expiration dates. See 15 U.S.C. §§ 1681c(g)(1), 1681n. Accordingly, the common nucleus of operative facts is, as plaintiffs pled, whether defendants programmed their equipment to print the expiration dates of customers'

25

credit/debit cards on receipts; the answer to that question will apply to all class members. Put differently, if plaintiffs are successful in establishing defendants' willful noncompliance with FACTA, then statutory damages are available to all class members uniformly.

Accepting as true plaintiffs' allegations that defendants' noncompliance was a consistent result of how their receipt-printing equipment was programmed, the significant questions of defendants' conduct and willfulness present a common nucleus of operative facts. See Iliadis, 191 N.J. at 108. Resolving those questions as a class offers the benefit of consistency. See Lee, 203 N.J. at 520.

Therefore, we disagree with the trial court and Appellate Division's conclusion that there are too many "uncertainties" to "determine a common nucleus of operative facts." We instead find that plaintiffs pled sufficient facts to survive a motion to dismiss on the question of predominance.

C.

The trial court and Appellate Division, relying on Local Baking, found plaintiffs did not satisfy the superiority requirement of Rule 4:32-1(b)(3) and that filing individual claims in small claims court would be a superior method of adjudicating plaintiffs' FACTA claims. We disagree and find this reliance on Local Baking misplaced. Giving plaintiffs the benefit of every inference of

26

fact, we conclude they sufficiently pled superiority to survive a motion to dismiss.

Determining superiority necessarily involves a comparison of alternative procedures. In re Cadillac, 93 N.J. at 436. That comparison involves considerations of fairness to the parties and judicial efficiency, as well as of class members' financial wherewithal or incentive to pursue "a claim that might cost more than its worth." Lee, 203 N.J. at 520. Plaintiffs sufficiently addressed those considerations in their complaint. See Dugan, 231 N.J. at 49 (noting that class action plaintiffs bear the burden to "demonstrate that 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy'" (quoting R. 4:32-1(b)(3))).

Plaintiffs alleged in their complaint that a class action is superior because individual statutory damages will be relatively small; thus, "the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each [class member] to individually seek redress for the wrongs done to them." They further allege it is unlikely that individual class members will bring FACTA claims and that, even if individual litigation were brought, the class action is still superior because individual claims would "present the potential for varying, inconsistent or contradictory judgments and would increase the delay and expense to all parties and the

27

court system resulting from multiple trials of the same factual issues." Those allegations are sufficient to establish superiority at the pre-discovery motion to dismiss stage. See Carbo, 410 N.J. Super. at 295 ("Rule 4:32-1 must be liberally construed, and a class action is the favored means of adjudicating numerous claims involving a common nucleus of facts for which each individual's recovery will be small.").

The trial court and Appellate Division, relying on Local Baking, determined that superiority was not established because, like the statutory award of $500 in TCPA claims, FACTA's statutory penalty of $100 to $1,000 sufficiently incentivized individual plaintiffs to bring claims. However, the reliance on Local Baking is misplaced because of the differences in establishing a statutory violation under the TCPA and establishing a statutory violation under FACTA. For example, pursuant to the TCPA, "[a] person or entity may . . . bring in an appropriate court of that State -- an action . . . to receive $500 in damages for each such violation." 47 U.S.C. § 227(b)(3)(B). Pursuant to FACTA, statutory damages ranging from $100 to $1,000 will be awarded if plaintiffs can establish defendants' noncompliance with FACTA was willful or negligent. See 15 U.S.C. §§ 1681n, 1681o. The significant difference between the two Acts is FACTA's willfulness requirement. The imposition of the willfulness requirement makes it more difficult for an

28

individual plaintiff to bring a FACTA claim for statutory damages because it is unlikely a plaintiff appearing pro se in small claims court will know how to demonstrate willfulness.

Moreover, as plaintiffs pled, individual damages are likely to be small and, as a result, individual class members are unlikely to have the financial wherewithal or incentive to bring a claim.  See Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund, 192 N.J. at 384 (noting the concern that, when class members lack the financial wherewithal to bring a claim, "absent a class, the individual class members would not pursue their claims at all, thus demonstrating superiority of the class action mechanism").

Additionally, trying these cases individually could result in inconsistent verdicts.  In fact, if forced to proceed individually, there is nothing stopping one attorney from bringing numerous plaintiffs into small claims court and trying each claim one at a time.  Such an approach would not foster judicial efficiency; nor would it be fair to defendants, who could be exposed to inconsistent results.

Rule 4:32-2(a) provides that,

> [w]hen a person sues or is sued as a representative of a class, the court shall, at an early practicable time, determine by order whether to certify the action as a class action.  An order certifying a class action shall define the class and the class claims, issues or defenses, and shall appoint class counsel in accordance with

29

paragraph (g) of this rule.  The order may be altered or amended prior to the entry of final judgment.

Class action discovery must be undertaken so that the court has the information necessary to allow it to determine whether the class should be certified.

Given those considerations, and at this stage of litigation before discovery has been conducted, plaintiffs alleged sufficient facts to survive a motion to dismiss on the question of superiority.

## VI.

In sum, we reverse the judgment of the Appellate Division and hold that plaintiffs sufficiently pled facts regarding Rule 4:32-1's numerosity, predominance, and superiority requirements to survive a motion to dismiss. However, we are not certifying the class.  We remand the matter for the parties to conduct discovery related to class action certification.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion.